## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| REBECCA PETTIT, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>ACCREDO HEALTH GROUP INC.,<br><br>Defendant. | Case No.: 4:24-cv-01373<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff Rebecca Pettit, by and through her undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant, Accredo Health Group Inc., and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, Eligibility Representative, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), employees of Defendant to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Indiana Wage Payment Statute ("IWPS"), Ind. Code § 22-2-5-1, *et seq.*, and alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like the one held by Plaintiff, are homogenous and issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

download work instructions, computer applications and work-related emails.") Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3.      Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its call center employees for their necessary boot-up and call ready work, which resulted in the failure to properly compensate them as required under applicable federal and state law.

4.      Plaintiff seeks a declaration that her rights, the rights of the FLSA Collective, the rights of the IWPS Class, and the rights of the Breach of Contract Class were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative Collective and Classes may be entitled.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9.     Defendant's employees, including Plaintiff, engage in interstate commerce—including, but not limited to utilizing telephone lines and Internet—and therefore, they are also covered by the FLSA on an individual basis.

10.     This Court has personal jurisdiction over Defendant because it maintains its principal place of business in Missouri and employs individuals in Missouri.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendant is subject to the Court's personal jurisdiction in this District.

## PARTIES

12.     Plaintiff is an individual who resides in the County of Boone, City of Lebanon, Indiana. Plaintiff worked for Defendant as a Patient Care Advocate from November 2023 to May 2024. Plaintiff executed her Consent to Sue form, attached hereto as Exhibit B.

13.     Defendant is a Delaware corporation.

14.     Defendant's principal place of business is in Saint Louis, Missouri.

    a.     Defendant's website lists an office Memphis, Tennessee. *See* https://www.accredo.com/contact-us.

    b.     Defendant's registration with the Tennessee Secretary of State lists its principal office as Saint Louis, Missouri.

    c.     Defendant's registration with the Missouri Secretary of State lists its principal office as Saint Lous, Missouri.

15.     Defendant employs Patient Care Advocates, Customer Service Representatives, Customer Service Associate Representatives, Eligibility Representatives, and/or other job titles

3

performing the same or similar job duties nationwide, including in Arizona, Florida, Georgia, Hawaii, Indiana, Missouri, Pennsylvania, Tennessee, and Texas. *See* Job Postings, attached hereto as Exhibit C.

16.     Defendant is a specialty pharmacy that serves patients with complex and chronic health conditions.

17.     Defendant may accept service via its registered agent CT Corporation System at 120 South Central Avenue, Clayton, MO 63105.

## GENERAL ALLEGATIONS

18.     Defendant employed Plaintiff as an hourly Patient Care Advocate. Defendant assigns CCRs, like Plaintiff, to receive inbound from, and make outbound calls to, Defendant's customers.

19.     Plaintiff's primary job duties as a Patient Care Advocate included answering calls from customers seeking medication.

20.     Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

21.     Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of her job duties as a CCR. Defendant never compensated Plaintiff for this necessary time worked off-the-clock.

22.     29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

**A.      *Unpaid Boot-Up and Call Ready Work.***

23.     Defendant tasked Plaintiff with providing customer service to Defendant's customers by use of Defendant's telephones and Defendant's computer programs.

24.     To access Defendant's systems, Plaintiff, and all other current and/or former CCRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications.  Once this boot-up and call ready work is completed, Plaintiff, and all other current and/or former CCRs, must log in to Defendant's phone system to take their first call at their scheduled shift start time.

25.     Defendant does not compensate Plaintiff, and all other current and/or former CCRs, until they have clocked into the timekeeping program only accessible on Defendant's computer.

26.      The boot-up and call ready work regularly takes up to 10 minutes per shift, or more if technical issues arise. Defendant did not compensate Plaintiff for this time.

27.     Regardless of how long the boot-up and call ready work takes, Defendant did not allow Plaintiff, and all other current and/or former CCRs, to clock in before completing the boot-up and call ready work.

28.     The boot-up and call ready work Plaintiff, and all other current and/or former CCRs, must complete before they begin being compensated is the same regardless of where they worked.

29.     The boot-up and call ready procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

30.     Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CCRs, directly benefits Defendant.

5

**B.**     ***Defendant's Policy and Practice of Off-the-Clock Work Violates Federal and State Law.***

31.     At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former CCRs, to routinely perform off-the-clock boot-up and call ready work by not compensating its employees until after they completed the boot-up and call ready procedure.

32.     Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

33.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CCRs, for their compensable boot-up and call ready work performed in any amount.

34.     Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

35.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former CCRs, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

36.     For example, during the workweek of March 24, 2024 to March 30, 2024, Defendant paid Plaintiff for over 40 hours of work. However, the hours Defendant paid Plaintiff did not include the boot-up and call ready work as alleged herein. Had Defendant properly paid Plaintiff for all hours worked during this pay period, then it would have paid her additional overtime wages equal to the uncompensated boot-up and call ready work. *See* Exhibit D.

37.     Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

38.     Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was $19.00 per hour. *See id.*

39.     Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former hourly CCRs working in Defendant's call center for their compensable boot-up and call ready work performed in workweeks totaling less than 40 hours and in workweeks totaling in excess of 40 hours at the proper rates, including overtime premiums.

40.     In reckless disregard of the FLSA and IWPS, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former CCRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former CCRs, in violation of the FLSA, IWPS, and the parties' contract.

C.     *Recordkeeping.*

41.     29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

42.     Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

43.     Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA because it failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CCRs' payroll records.

44.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

45.    The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

46.    Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, Eligibility Representative, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), who worked for Accredo Health Group, Inc., at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.[1]

---

[1] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

47.     Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

48.     *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its CCR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

49.     Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

50.     Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar,

if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## THE INDIANA WAGE PAYMENT STATUTE CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative IWPS Class defined to include:

> *All current and former Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, Eligibility Representative, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), who worked for Accredo Health Group, Inc., at any time in the last two years.*

(hereinafter referred to as the "IWPS Class"). Plaintiff reserves the right to amend this definition as necessary.[2]

52.     *Numerosity*: The members of the IWPS Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

53.     *Commonality/Predominance*: There is a well-defined community of interest among members of the IWPS Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

        a.     Whether Defendant violated the IWPS by failing to pay current and former employees for all wages earned;

        b.     The proper measure of damages sustained by the proposed IWPS Class; and

---

[2] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

       c.       Whether Defendant violated Ind. Code § 22-2-2-8 by failing to make, keep, and preserve true and accurate payroll records.

54.    *Typicality*: Plaintiff's claims are typical of those of the IWPS Class in that Plaintiff and all other Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other members of the IWPS Class and Plaintiff's legal theories are based on the same legal theories as all other members of the IWPS Class: whether Defendant employed all members of the IWPS Class on an hourly basis without receiving compensation for all wages earned.

55.    *Adequacy*: Plaintiff will fully and adequately protect the interests of the IWPS Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the IWPS Class.

56.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for members of the IWPS Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of members of the IWPS Class, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the claims of the putative IWPS Class, create significant

economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

57.    This case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[3]

58.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, Eligibility Representative, and/or other job titles performing the same or similar job duties (collectively "Call Center Representatives" or "CCRs"), who worked for Accredo Health Group, Inc., at any time in the last two years.*

(hereinafter referred to as the "Breach of Contract Class"). Plaintiff reserves the right to amend this definition as necessary.[4]

59.    *Numerosity:* The members of the Breach of Contract Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a

---

[3] To the extent the Court finds, or Defendant argues, the relationship between itself and its CCRs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Class' quasi-contract claims (Count IV).

[4] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

Class will benefit the parties and the Court. The precise number of members of the Class should be readily available from a review of Defendant's personnel and payroll records.

60.     *Commonality/Predominance*: There is a well-defined community of interest among members of the Breach of Contract Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendant offered to pay Plaintiff and the Breach of Contract Class certain rates (depending on the technical job titles) per hour for each hour worked as call center workers;

b.     Whether Plaintiff and the Breach of Contract Class accepted Defendant's offer by performing the essential functions of the job;

c.     Whether Defendant breached the contract by failing to pay Plaintiff and the Breach of Contract Class for each and every hour worked; and

d.     Whether Plaintiff and the Breach of Contract Class were damaged.

61.     *Typicality*: Plaintiff's claims are typical of those of the Breach of Contract Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Class members: whether Plaintiff and the Class worked under an implied contract to be paid for each and every hour worked by Defendant.

62.     *Adequacy*: Plaintiff will fully and adequately protect the interests of the Breach of Contract Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour collective and class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Class.

63.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for members of the Breach of Contract Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of the Class members' claims, even if each member of the Class could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

64.    The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendant's payroll systems will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES (FLSA Collective)

65.    Plaintiff individually and on behalf of the proposed FLSA Collective, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

66.    At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

67.    Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

68.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

69.    Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

70.    The positions of Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, and Eligibility Representative are not exempt from the FLSA.

71.    Defendant's other job titles performing similar call center job duties are not exempt from the FLSA.

72.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

73.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

74.    Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

75.    Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

15

76.    Defendant's violations of the FLSA were knowing and willful.

77.    By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated Patient Care Advocates, Customer Service Representatives, Customer Service Associate Representatives, Eligibility Representatives, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to Patient Care Advocates, Customer Service Representatives, Customer Service Associate Representatives, Eligibility Representatives, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

78.    None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Collective.

79.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

**INDIANA WAGE PAYMENT STATUTE ("IWPS"), Ind. Code § 22-2-5-1, *et seq.***
**(IWPS Class)**

80.    Plaintiff, individually and on behalf of the proposed IWPS Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

81.    Plaintiff and members of the IWPS Class are current and former employees of Defendant within the meaning of the IWPS.

16

82.     Defendant at all relevant times was an employer within the meaning of the IWPS.

83.     The positions of Patient Care Advocate, Customer Service Representative, Customer Service Associate Representative, and Eligibility Representative are not exempt from the IWPS.

84.     Defendant's other job titles performing similar call center job duties are not exempt from the IWPS.

85.     The IWPS requires every employer to pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. Ind. Code § 22-2-5-1(a).

86.     The IWPS states that "payment shall be made for all wages earned." Ind. Code § 22-2-5-1(b).

87.     Defendant violated the IWPS by failing to pay Plaintiff and the IWPS Class for all wages earned.

88.     An employer who fails to make payment of wages to an employee "shall be liable to the employee for the amount of unpaid wages, and the amount may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee." Ind. Code § 22-2-5-2.

89.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the IWPS Class have suffered damages in an amount to be determined at trial.

90.     The court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs. Ind. Code § 22-2-5-2.

91.     In addition, if the court in any such suit determines that the employer that failed to pay the employee was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee. *Id.*

## COUNT III

**BREACH OF CONTRACT**
**(Breach of Contract Class)**

92.     Plaintiff, individually and on behalf of the proposed Breach of Contract Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

93.     Plaintiff and the Breach of Contract Class were hired at various times. Defendant offered to pay Plaintiff and the Class certain rates per hour for each hour worked as a CCR. Each Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

94.     Plaintiff and the Breach of Contract Class accepted the offer and worked for Defendant as CCRs, and/or other job titles performing the same or similar job duties.

95.     Plaintiff and the Breach of Contract Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

96.     Plaintiff's duties, and the duties of Breach of Contract Class members, required boot-up and call ready work.

97.     Plaintiff and every other member of the Breach of Contract Class performed under their contract by doing their jobs in addition to carrying out the off-the-clock duties Defendant required.

98.     Upon information and belief, Defendant does not compensate its CCRs, and/or other job titles performing the same or similar job duties, for all boot-up and call ready work.

99.     Despite being required to complete these integral boot-up and call ready duties, Plaintiff and the Breach of Contract Class were not compensated at their hourly rate for their work performed.

100.    By failing to pay Plaintiff and the Breach of Contract Class for the boot-up and call ready work, Defendant breached its contract with Plaintiff and the Class to pay their hourly rate for each hour worked.

101.    Defendant breached its duty to keep accurate records and to keep track of the time Plaintiff and the Breach of Contract Class spent performing boot-up and call ready work, which is a fundamental part of an employer's job.

102.    In sum, the facts set forth above establish the following elements and terms of the contract:

      a.    *Offer*: a set hourly rate for each hour worked as a CCR;

      b.    *Acceptance*: Plaintiff and the Breach of Contract Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant)

      c.    *Breach*: Defendant did not pay Plaintiff and the Breach of Contract Class for each hour (or part thereof) worked; and

      d.    *Damages*: By failing to pay Plaintiff and the Breach of Contract Class their hourly rate for each hour worked, Defendant damaged Plaintiff and the Class in an amount to be determined at trial.

103.    As a direct and proximate cause of Defendant's breach, Plaintiff and the Breach of Contract Class were damaged in an amount to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT
### (Unjust Enrichment Class)

104.    Plaintiff individually and on behalf of the proposed Unjust Enrichment Class, re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

105.    Upon information and belief, Plaintiff's, and every other Unjust Enrichment Class member's boot-up and call ready work—which is integral and indispensable to their principal

activities as a CCR—provided valuable work and income for Defendant; namely, compensation to Defendant for completing customer service activities that directly benefited Defendant.

106.    Plaintiff and the Unjust Enrichment Class were unable to perform any job function without turning on or waking up their computer, logging in to the desktop, and opening the required programs. In short, to start their work of fielding customer calls precisely at their designated start time, Plaintiff and the Class worked off-the-clock before their shift began. Without the boot-up and call ready work, Plaintiff and the Class were unable to take customer calls at their designated start time. Further, upon information and belief, Defendant does not compensate its CCRs for all boot-up and call ready work.

107.    As part of their ongoing relationship with Defendant, Plaintiff and the Unjust Enrichment Class expected to be paid wages for the time they spent doing their jobs, including performance of the necessary boot-up and call ready work performed each shift.

108.    By not paying Plaintiff and the Unjust Enrichment Class for the time they spent performing necessary boot-up and call ready work, Defendant was, and continues to be, unjustly enriched at the expense of Plaintiff and the Class in an amount to be determined at trial.

109.    By not paying Plaintiff and the Unjust Enrichment Class for the time they spent performing necessary boot-up and call ready work, Defendant also saved, and continues to save itself, hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff and the Class members' benefit.

110.    It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Unjust Enrichment Class without compensation.

111.    As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Unjust Enrichment Class were harmed in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.   An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above;

b.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective and class members of their rights under this litigation;

c.   An Order certifying the IWPS Class pursuant to Fed. R. Civ. P. 23;

d.   An Order certifying the Breach of Contract Class (or in the alternative, the Unjust Enrichment Class) pursuant to Fed. R. Civ. P. 23;

e.   An Order designating Plaintiff to act as the Class Representative on behalf of the FLSA Collective, the IWPS Class, and the Breach of Contract Class (or in the alternative, the Unjust Enrichment Class);

f.   An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

g.   An Order declaring that Defendant violated its obligations under the FLSA;

h.   An Order declaring that Defendant willfully violated the IWPS;

i.   An Order declaring that Defendant breached its contract with Plaintiff and the Breach of Contract Class (or in the alternative, was unjustly enriched at the expense of Plaintiff and the Unjust Enrichment Class);

j.   An Order granting judgment in favor of Plaintiff and the FLSA Collective against Defendant and awarding the amount of unpaid minimum wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the Collective's regular rate multiplied by all hours that Plaintiff and the Collective worked in excess of 40 hours per week;

k.   An Order granting judgment in favor of Plaintiff and the Classes and against Defendant and awarding the amount of unpaid straight-time wages calculated at Plaintiff's and the Classes' regular rate of pay;

l.  An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

m.  An Order awarding liquidated damages to Plaintiff and the IWPS Class in an amount equal to the amount of unpaid wages found owing to Plaintiff and the Class under the IWPS;

n.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

o.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

p.  An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through her undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.


Dated: October 15, 2024                    Respectfully submitted,

                                           s/ *Trent B. Miracle*

                                           Trent B. Miracle #502102 (MO)
                                           **FLINT COOPER COHN THOMPSON & MIRACLE**
                                           222 E. Park Street, Suite 500
                                           Edwardsville, IL 62025
                                           Phone: (618) 288-4777
                                           Fax: (618) 288-2864
                                           Email: tmiracle@flintcooper.com

                                           *Local Counsel for Plaintiff*

Jacob R. Rusch #0391892 (MN)*
Zackary S. Kaylor #0400854 (MN)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*

*\*Pro Hac Vice forthcoming*